In re **BARRETT REFINING CORPORATION,**
Debtor.

No. 96–10919–BH.

United States Bankruptcy Court,
W.D. Oklahoma.

June 5, 1998.

Environmental Quality and Mississippi Department of Environmental Quality.

Joe E. Edwards and Joel W. Harmon, Day, Edwards, Federman, Propester & Christensen, Oklahoma City, OK, for Unsecured Creditors' Committee.

## *MEMORANDUM OF DECISION AND ORDER DENYING OBJECTION OF THE STATE OF MISSISSIPPI TO THE JURISDICTION OF THIS COURT*

RICHARD L. BOHANON, Bankruptcy Judge.

The Mississippi Commission on Environmental Quality and the Mississippi Department of Environmental Quality (hereinafter, collectively, "Mississippi") have objected to, *inter alia*, the jurisdiction of this court.[1] The issue to be decided concerns the Eleventh Amendment of the Constitution of the United States which states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

### *FACTS & PROCEDURAL HISTORY*

The debtor, Barrett Refining Corporation, is an Oklahoma Corporation which operated a crude oil refinery in the State of Mississippi. Mississippi brought charges against Barrett for pollution, resulting in the assessment of a demand for remediation of the pollution and fines and penalties of $750,000, which, in turn, resulted in Mississippi's claim in this court. Subsequently, Barrett filed this Chapter 11 petition in the Western District of Oklahoma.

Mississippi then filed its proof of claim for remediation of the pollution and the fines and penalties. Included in Mississippi's proof of claim was a statement that the filing was not a consent to jurisdiction of this court nor a

Stephen W. Elliott and Scott C. Sublett, Kline & Kline, Oklahoma City, OK, for Barrett Refining Corporation.

Chuck D. Barlow and Betty Ruth Fox, Jackson, OK, for Mississippi Commission on

---

1. The full title of Mississippi's motion is "Motion of the Mississippi Commission on Environmental Quality and the Mississippi Department of Environmental Quality to Deny Discharge, Subordination, or Other Treatment of Injunctive Relief and Penalties Ordered by that Commission, or, in the Alternative, Motion for Withdrawal of Proof of Claim, or, in the Further Alternative, Motion to Abstain and to Withdraw the Reference and Memorandum Brief in Support."

waiver of any rights. Barrett then proposed a plan which included references to 11 U.S.C. § 106.[2] This section abrogates sovereign immunity on the part of governmental units as to certain sections of the Bankruptcy Code and provides further that governmental units waive sovereign immunity by filing a proof of claim.

Barrett's proposed plan includes the following provisions concerning Mississippi: 1) the claim for remediation of the pollution is allowed priority treatment and will be paid in full and 2) all other claims by Mississippi are classified as unsecured and will receive the same treatment as that class.

The Supreme Court then decided *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), which raised several questions about state sovereign immunity and the Eleventh Amendment.

Subsequently, Mississippi filed this motion and Barrett and the Unsecured Creditors' Committee have both responded.

### CLAIMS

Mississippi makes the following assertions:

1) The fines and penalties must also be allowed the same priority treatment as the remediation claim and cannot be subordinated or discharged, and, further, this court lacks jurisdiction over Mississippi for the following reasons:

A) 11 U.S.C. § 106 is unconstitutional pursuant to *Seminole*; and

2. 11 U.S.C. § 106 states, in pertinent part:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
(3) The court may issue against a governmental unit an order, process, or judgment under

B) Mississippi has not waived sovereign immunity by filing a proof of claim; or

2) In the alternative, to permit Mississippi to withdraw its proof of claim, pursuant to Fed. R. Bankr.P. 3006, and for a declaration that any action by Mississippi to enforce the fines and penalties will not violate the automatic stay; or

3) In the further alternative, for this court to abstain from deciding this issue pursuant to 28 U.S.C. § 1334(c) and for the United States District Court to withdraw the reference of this case, pursuant to 28 U.S.C. § 157(d), for the following reasons:

A) The issue is not a core proceeding;

B) The issue involves matters of constitutional law, sovereign immunity, and environmental protection.

Mississippi's request to withdraw the reference has already been denied by the District Court. In its order, the Court ruled that Mississippi's motion was untimely, as it was 55 days late, and that the matter under consideration appeared to be a core proceeding. The District Court also noted that Mississippi was a claimant and that neither Barrett nor the Unsecured Creditors' Committee had asserted any claims against Mississippi. Although the District Court did not address the issue of abstention, its order specifically addressed Mississippi's grounds for requesting abstention, rejected them, and upheld the federal bankruptcy jurisdiction and the referral of this case to this court.

such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such an order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

. . . . .

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

. . . . .

## ISSUES

Mississippi's claims should be analyzed in accordance with the following questions:

1) Is 11 U.S.C. § 106 unconstitutional?

A) Is 11 U.S.C. § 106 contrary to the Eleventh Amendment?

(1) Is a bankruptcy case a "suit" under the Eleventh Amendment?

(2) Is a bankruptcy case comparable to an admiralty suit?

B) Is 11 U.S.C. § 106 constitutional in light of *Seminole* ?

(1) Does *Seminole*, on its face, apply to bankruptcy cases?

(2) Is the federal statute considered in *Seminole* comparable to 11 U.S.C. § 106?

(3) Does *Seminole* apply Eleventh Amendment immunity to states in bankruptcy cases because the Bankruptcy Code is based on Article I of the Constitution?

(4) Does *Seminole* conflict with the position that bankruptcy cases are not suits subject to the Eleventh Amendment?

2) Did Mississippi waive sovereign immunity by filing its proof of claim and participating in the case?

A) What constitutes a waiver of state sovereign immunity under the Eleventh Amendment?

B) What constitutes a valid waiver of state sovereign immunity under 11 U.S.C. § 106?

C) How do the Eleventh Amendment and 11 U.S.C. § 106 interface?

D) Do the actions of Mississippi, including the filing of its proof of claim, constitute a valid waiver of sovereign immunity?

3) Should Mississippi be allowed to withdraw its proof of claim and, if so, what is the affect of withdrawal?

## HISTORY OF THE ELEVENTH AMENDMENT

The catalyst for the enactment of the Eleventh Amendment was the decision by the Supreme Court in *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793). *Chisholm* was a suit in assumpsit (*i.e.*, a breach of contract) by Chisholm who was the executor of a deceased citizen of South Carolina against the State of Georgia. Both Chisholm and the deceased were citizens of South Carolina. During the Revolutionary War, the deceased had provided Georgia war supplies and Georgia had not paid the debt by the time of his death. Chisholm then brought an original action in the Supreme Court. Georgia, however, refused to appear, claiming that the Supreme Court did not have jurisdiction. The Court ruled in Chisholm's favor, four to one, but withheld final judgment, providing the State of Georgia the opportunity to appear.

Justice James Wilson, one of the affirmative votes, who, as a signer of both the Declaration of Independence and the Constitution and formerly a delegate to the Federal Constitutional Convention,[3] was eminently qualified to write for the Court. He presented three grounds in support of his affirmative vote. First, he explained that "sovereignty", with regard to a state and the people within the state, is such that the state is subordinate to the people. Indeed, states and governments are made to serve man. A state is merely a conglomeration of individuals. Thus, as individuals are bound by the law and subject to the jurisdiction of the courts, why should a state (merely a conglomeration of individuals) not also be bound by the laws and the jurisdiction of the courts? *Id.*, 2 U.S. at 453–58.

Further, stated Justice Wilson, the concept of "sovereignty" necessarily involves subjects. He noted that, in the United States, there are no subjects, but, rather, there are citizens. Indeed, in the Constitution, itself, there are no references to American "subjects", "immunity", or even to "sovereignty." Thus, he concluded that in our political system there are no sovereigns. Moreover, power, which is the essence of sovereignty, rests with the "People of the United States" and Georgia *voluntarily* became a part of the

---

3. Justice Wilson was also a member of the Committee of Detail which oversaw the drafting of Article III of the Constitution. Clyde E. Jacobs,

*The Eleventh Amendment and Sovereign Immunity* 17 (Greenwood Press 1972).

United States, thereby yielding its previous sovereign immunity. Therefore, with respect to the purposes of the Union, the State of Georgia is not a sovereign state. Moreover, sovereignty is a concept linked with the monarchs of Europe, to include Great Britain. There are no monarchs in the United States or in the State of Georgia. Thus, concluded Justice Wilson, sovereignty is not a principle applicable to the states and Georgia is subject to the jurisdiction of the federal courts. *Id.* at 453–58.

Even with regard to monarchs in other political systems in an historical context, Justice Wilson acknowledged that it was possible to bring suit against them. For example, in ancient Saxon England, it was possible to sue the king. The same was true in Prussia under Frederic, where all men were held to be equal to obtain justice. *Id.* at 459–61. Justice Wilson specifically responded to the argument that English law, which, at that current time, had monarchs and sovereign immunity, was the source of this concept of sovereign immunity. But that current English monarchy was a despotic government. *Id.* at 462. Thus, the English law was not a suitable reference or authority for and should not apply to the United States, as the United States was not nor was it intended to be a despotic government.

Justice Wilson also wrote that because the Constitution empowered the United States with forming a more perfect union, establishing justice, ensuring domestic tranquility, providing for the common defense, and securing the blessings of liberty; it was a necessary condition that the United States be vested with judicial authority and not just legislative and executive authority. And further, because the people of Georgia were ratifiers of the Constitution, they were subject to such judicial authority. Moreover, Justice Wilson explained that it would be superfluous to make laws and then prohibit the judiciary from enforcing them. The Constitution has stated the highest laws: to form a more perfect union, to establish justice, and to ensure domestic tranquility. If the judiciary does not have authority over the states to enforce them, then these constitutional mandates would be meaningless. Justice Wilson, and rightly so, rejected this idea. *Id.* at 463–65.

Chief Justice John Jay, also one of the Founding Fathers, echoed the arguments of Justice Wilson. For Chief Justice Jay, the source of sovereignty was European feudalism, which was not the philosophical basis of the United States, whereas the Constitution was a social compact. *Id.* at 471–73. Indeed, if the Constitution was intended to prohibit suits against states as a defendant, it would have clearly so stated, claimed the Chief Justice. *Id.* at 476–77.

Despite the continuance, Georgia never appeared before the Supreme Court in this case. Subsequently, the Eleventh Amendment was passed and *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), was dismissed in *Hollingsworth v. Virginia,* 3 U.S. (3 Dall.) 378, 1 L.Ed. 644 (1798).

The reaction to *Chisholm* was harsh, especially in Georgia. Georgia almost enacted a state law which would have mandated death by hanging, without benefit of clergy, for any person bringing suit in the United States Supreme Court against Georgia.[4] As a result, the Eleventh Amendment was enacted within a few years of *Chisholm.*[5]

Two reasons have been advanced for explaining the reaction to *Chisholm* and the swift passage of the Eleventh Amendment: 1) that the initial understanding of the states was that they were immune to suit from individuals under the Constitution at the time of its ratification[6] and 2) that states were

---

**4.** John V. Orth, *The Judicial Power of the United States* 18 (Oxford University Press 1987); Clyde E. Jacobs, *The Eleventh Amendment and Sovereign Immunity* 56–57 (Greenwood Press 1972).

**5.** The Eleventh Amendment was apparently ratified in February 1795. *See* William A. Fletcher, *A Historical Interpretation of the Eleventh Amendment: A Narrow Construction of an Affirmative Grant of Jurisdiction Rather Than a Prohibition*

*Against Jurisdiction,* 83 Stan. L.R. 1033, 1059 (1983). However, it was not reported to Congress until January 8, 1798. *See* 1 Annals of Cong. 809–10 (1798).

**6.** This understanding seems to be inaccurate for a number of reasons. During their ratification debates of the federal Constitution, at least five states (Virginia, North Carolina, New York, Massachusetts, and New Hampshire) proposed

fearful of being haled into federal court to pay their debts.[7]

## ANALYSIS

As a preliminary matter, bankruptcy jurisdiction should be explained. First, the Bankruptcy Clause, which is the foundation of federal bankruptcy law and authority, is found in Article I, § 8, of the Constitution and it provides that "The Congress shall have power ... To establish an uniform rule of naturalization, and uniform laws on the subject of bankruptcies throughout the Unites States." Under 28 U.S.C. § 1334, original and exclusive jurisdiction over bankruptcy cases is then vested in the United States district courts. Under 28 U.S.C. § 157, each district court has the authority to refer bankruptcy cases to the bankruptcy courts. Particular, enumerated, circumstances can be the grounds for a withdrawal of the reference by the district court. The United States District Court for the Western District of Oklahoma has a standing order referring all bankruptcy cases to the bankruptcy court.

## ISSUE 1

### IS 11 U.S.C. § 106 UNCONSTITUTIONAL?

■ Mississippi argues that *Seminole* stands for the proposition that, pursuant to the Eleventh Amendment, federal courts do not have jurisdiction over the states pursuant to any statute based on Article I or Article III powers; including bankruptcy.[8]

The Eleventh Amendment has been subject to a number of interpretations by the Supreme Court. Two of the most important have significantly expanded the scope of the

amendments negating the Article III clause permitting suits between citizens and states from being heard in the federal courts. And a sixth state (South Carolina) proposed a similar amendment during the ratification debates of the Bill of Rights. *See* William A. Fletcher, *A Historical Interpretation of the Eleventh Amendment: A Narrow Construction of an Affirmative Grant of Jurisdiction Rather Than a Prohibition Against Jurisdiction*, 83 Stan. L.R. 1033, 1051–52 (1983).

Further, it seems that, overall, the greater number of the Founding Fathers believed that under Article III, the states could be sued in federal courts. Clyde E. Jacobs, *The Eleventh Amendment and Sovereign Immunity* 39–40 (Greenwood Press 1972) (stating that all the Anti–Federalists and a portion of the Federalists believed that Article III permitted the states to be sued in federal courts).

Additionally, the Federal Judiciary Act of 1798, § 13, conferred original, but not exclusive, jurisdiction upon the United States Supreme Court over suits between states and citizens of other states. The Act passed Congress without any opposition.

Moreover, the opinions of Chief Justice Jay and Justice Wilson in *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), and Chief Justice Marshall in *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821), also present the belief that the states could be sued under the Constitution in the federal courts.

Thus, it appears that there was the general understanding on the part of the states, prior to the Eleventh Amendment, that the states were subject to federal jurisdiction.

**7.** Although one scholar feels that this reason might be inaccurate, as the states had the desire to pay their debts and tried to do so and many of the Founding Fathers were pro-creditor (Clyde E. Jacobs, *The Eleventh Amendment and Sovereign Immunity* 69–71 (Greenwood Press 1972)) the majority of writers hold that this reason is accurate. *See* William A. Fletcher, *A Historical Interpretation of the Eleventh Amendment: A Narrow Construction of an Affirmative Grant of Jurisdiction Rather Than a Prohibition Against Jurisdiction*, 83 Stan. L.R. 1033, 1058 (1983) (citing, at n.114, 1 C. Warren, *The Supreme Court in United States History* 99 (1922); J. Goebel, *History of the Supreme Court of the United States, Antecedents and Beginnings to 1801* 741–56 (1971); David E. Engdahl, *Immunity and Accountability for Positive Governmental Wrongs*, 44 U. Colo. L.Rev. 1, 8 (1972); John E. Nowak, *The Scope of Congressional Power to Create Causes of Action Against State Governments and the History of the Eleventh and Fourteenth Amendments*, 75 Colum. L.Rev. 1413, 1439–41 (1975)). *See also Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821) (Marshall, C.J.).

One of the best explanations for why Federalists, who were pro-strong central government, voted to. ratify the Eleventh Amendment, which limited strong central government, was that the Federalists understood the Amendment as just addressing the question of states being sued in federal courts for their debts. John V. Orth, *The Judicial Power of the United States* 28 (Oxford University Press 1987).

**8.** This court notes that the Supreme Court has ruled that there is a presumption of constitutionality of an act of Congress. *O'Gorman & Young, Inc. v. Hartford Insurance Company*, 282 U.S. 251, 257–58, 51 S.Ct. 130, 75 L.Ed. 324 (1931). 11 U.S.C. § 106 is an act of Congress. Thus, Mississippi has the burden of demonstrating that the act is unconstitutional.

Amendment beyond its plain language. For example, it has been held that the Amendment applies not only to citizens from different states, but also to citizens from the same state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).[9] *See also United States v. Texas,* 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892). Further, Eleventh Amendment immunity applies not only to the states, but also to agencies of the states. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The Supreme Court has also examined what types of legal actions fall within the ambit of the Eleventh Amendment. For example, the Court, noting that admiralty suits are not, technically, "suits in law or equity", ruled that they are, nevertheless, subject to the Amendment. *Welch v. Texas Highways & Public Transportation Department,* 483 U.S. 468, 473, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). *See also Ex parte New York,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

The Supreme Court has, however, specifically stated that bankruptcy cases are not "suits" under the Eleventh Amendment. *See Gardner v. New Jersey,* 329 U.S. 565, 572, 67 S.Ct. 467, 91 L.Ed. 504 (1947). Indeed, one passage in *Gardner* could, arguably, be used to resolve this matter:

> It is traditional bankruptcy law that he who involves the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure. [citation omitted.] If the claimant is a State, the procedure of proof and allowance *is not transmitted into a suit* against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State. The whole process of proof and allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res. It is none the less such because the claim is rejected in toto, reduced in part, given a priority inferior to that claimed, or satisfied in some way other than payments in cash. When the State becomes the actor and files a claim against the fund it waives any immunity it might have had respecting the adjudication of the claim [citations omitted] (emphasis added).

*Id.* at 573–74, 67 S.Ct. 467. *Gardner* is further supported by an earlier decision of the Supreme Court. *New York v. Irving Trust Company,* 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933). In *Irving Trust,* although New York argued that the bankruptcy court did not have jurisdiction to exercise power over the State as a matter of state sovereignty, the Court pronounced that the "federal government possesses supreme power in respect of bankruptcies" and upheld federal bankruptcy jurisdiction. *Id.* at 333, 53 S.Ct. 389 (citing *International Shoe Company v. Pinkus,* 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929)). Even though the Eleventh Amendment was not specifically mentioned in *Irving Trust,* the focus of the decision was state sovereignty, which is the essence of the Eleventh Amendment.

■ The support for the position that the Eleventh Amendment does not apply to bankruptcy cases is not limited to these two decisions. Whether a bankruptcy case falls within the scope of the Eleventh Amendment

---

9. There is a continuing significant controversy over the *Hans* decision. Numerous scholars feel the case was wrongly decided as it has no basis in the plain language of the Eleventh Amendment. *See* Carlos Manuel Vazquez, *What is Eleventh Amendment Immunity?* 106 Yale L.J. 1683, 1685 (1997) (citing John Norton Pomeroy, *The Supreme Court and State Repudiation—The Virginia and Louisiana Cases,* 17 Am. L.Rev. 684, 684–85 (1883) and Vicki C. Jackson, *The Supreme Court, the Eleventh Amendment, and State Sovereign Immunity,* 98 Yale L.J. 1, 3–4 (1988)). Indeed, over the years, dissenting justices of the Supreme Court have strongly advocated for the reversal of *Hans. See, e.g., Welch v. Texas Highways and Public Transportation Department,* 483 U.S. 468, 478, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). Also, in *Seminole,* the dissenting justices sharply criticize *Hans.*

The most persuasive position offered against *Hans,* in favor of the earlier rulings, is that the justices who gave the earlier decisions were involved in the writing and ratification of the Constitution and were alive during the time of the enactment of the Eleventh Amendment and would have had a clearer understanding of its meaning than the justices who have attempted to interpret it nearly a century later, as occurred with *Hans.* John V. Orth, *The Judicial Power of the United States* 22 (Oxford University Press 1987).

turns upon the definition of a "suit". The Supreme Court first presented the definition of a suit within the meaning of the Eleventh Amendment in *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821).

In *Cohens,* Chief Justice Marshall wrote that not all legal actions were suits. The decision shows that a suit consists of: 1) an adversarial proceeding, 2) which arises as a result of a deprivation or injury, 3) which involves at least two parties, 4) which compels the attendance of the parties, 5) which asserts and prosecutes a claim against one of the parties, and 6) which demands the restoration of some thing from the defending party. *Id.,* 19 U.S. at 407–12. Chief Justice Marshall noted in his decision that there are legal actions which are not "suits" within the scope of the Eleventh Amendment.

It, thus, appears that, under *Cohens,* a bankruptcy case is not a "suit" within the meaning of the Eleventh Amendment. In the first place, a bankruptcy case is not an adversarial proceeding. Instead, it is a request by a single party to discharge or rearrange debts. This stance is highlighted by the style of a bankruptcy case: *"In re John Debtor."* A bankruptcy case is not styled *"John Debtor v. Jane Creditor."* [10] Further, a bankruptcy case does not, as a matter of parties of record, involve two or more adversarial parties, unless a debtor, creditor, or trustee initiates a complaint within the bankruptcy case. In such an instance, this adversary proceeding is dependent on the bankruptcy case and is not an independent cause of action. Further, a bankruptcy case, itself, is not prompted by a deprivation or injury by an opposing party.

Also, in a bankruptcy case, the only party required to attend is the debtor. Creditors are not compelled to attend. Notice is given to the creditors but they are free to ignore the case.

Finally, a petition commencing a bankruptcy case does not assert or prosecute a claim against any other party. The debtor does not demand the presence of other parties to adjudicate a claim. Nor does the debtor, by the petition, "sue" anyone or demand the restoration of some thing from an opposing party. In all of these explanatory instances, where the term "party" has been used, the term "state" can be substituted. Thus, under *Cohens,* a bankruptcy case is not a "suit" falling within the scope of the Eleventh Amendment such that state sovereign immunity is triggered.

The postulate advanced by Chief Justice Marshall in *Cohens,* concerning the elements of a suit, is also present in a modern Supreme Court decision holding that a bankruptcy case is not a suit. In *Gardner,* as previously mentioned, the Court stated: *"If the claimant is a State, the procedure of proof and allowance is not transmitted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State."* *Gardner v. New Jersey,* 329 U.S. 565, 573–74, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (emphasis added). Thus, there is significant modern support for Chief Justice Marshall's decision concerning "suits" and the Eleventh Amendment. *See also Missouri v. Fiske,* 290 U.S. 18, 26–27, 54 S.Ct. 18, 78 L.Ed. 145 (1933)(citing *Cohens* with approval of Chief Justice Marshall's definition of a suit.)

Additional authority for this position is also found in another early Supreme Court decision, also authored by Chief Justice Marshall, where the Court acknowledged that a suit, generally, requires the adversarial litigation of a right between two parties in a court of

---

**10.** There is a significant difference between a bankruptcy case and an adversary proceeding within a bankruptcy case. An adversary proceeding is a civil proceeding arising in or relating to a bankruptcy case. *See* 28 U.S.C. § 1334(b) and Fed. R. Bankr.P. 7011. The adversary proceeding often involves the recovery of property or the determination of the value of property and has adversarial parties. However, the adversary proceeding is related to and dependent on the bankruptcy case and cannot occur unless a bankruptcy case has been filed. *Kenan v. FDIC (In re George Rodman, Inc.),* 33 B.R. 348 (Bankr.W.D.Okla.1983) (citing Fed. R. Bankr.P. 7001). Indeed, in many bankruptcy cases, adversary proceedings do not occur.

However, this case concerns an objection filed by Mississippi to the confirmation of the plan filed by Barrett, which is not an adversary proceeding.

justice to obtain a remedy. *Weston v. City Council of Charleston,* 27 U.S. (2 Peters) 449, 464, 7 L.Ed. 481 (1829). This definition requires that there be an initial deprivation or injury for which a redress can be obtained. Thus, *Weston* also supports the proposition that a bankruptcy case is not a suit. A bankruptcy case does not have adversarial parties nor does it depend upon any injury or deprivation caused by a "defendant".

Further, a bankruptcy petition does not seek a remedy or redress in the traditional sense of the term. *See also Federal Housing Administration, Region No. 4 v. Burr,* 309 U.S. 242, 246 n. 8, 60 S.Ct. 488, 84 L.Ed. 724 (1940) (citing *Weston* as authority for the definition of a suit). Moreover, in *Burr,* the Supreme Court indicated that a "suit" encompassed the use of such legal processes as attachment and garnishment: *i.e.,* instruments of compulsory process against a party. *Id.* at 245–46, 60 S.Ct. 488. These compulsory processes are not employed in bankruptcy cases.[11] Thus, additional modern support for Chief Justice Marshall's explanation of a suit, within the scope of the Eleventh Amendment, *does* exist.

This leads to the question of what types of legal actions do fall within the scope of the Eleventh Amendment. Turning to the question of whether a bankruptcy case is sufficiently similar to an admiralty case, such that Eleventh Amendment immunity should also be extended to states in bankruptcy cases, this court concludes that it is not. In support, this court notes that in the seminal case deciding that admiralty cases were subject to the Eleventh Amendment, the Supreme Court acknowledged that: 1) the admiralty suit in question asked for damages to be levied against an agent of the State of New York, 2) if the agent could not be found, the process mandated that the goods of New York should be attached, and 3) the court issued compulsory process which was served upon an agent of the State. *Ex parte New York,* 256 U.S. 490, 495–96, 41 S.Ct. 588, 65

L.Ed. 1057 (1921). A bankruptcy case can be easily distinguished from the admiralty suit presented in *Ex parte New York.* First, a bankruptcy petition does not seek damages against another party.[12] Second, there is no opposing party whose property is subject to attachment. Third, compulsory process is not issued against an opposing party by the filing of a bankruptcy petition. Thus, as *Ex parte New York* illustrates, an admiralty suit has sufficient similarities to a regular suit (involving adversarial parties, injuries, claims, compulsory process, etc.) that it is within the scope of the Eleventh Amendment. However, a bankruptcy case does not have these enumerated elements and is significantly different from an admiralty suit. Thus, any analogous argument, that because admiralty suits are covered by the Eleventh Amendment, bankruptcy cases should also be covered by the Eleventh Amendment, is without sufficient foundation in fact and law.

In its brief, Mississippi asserts that a bankruptcy case is a suit for Eleventh Amendment purposes, but presents no authority in support of this position. Indeed, Mississippi asks "What is this action, if not a 'suit' . . . ?" *See* Supplemental Brief of Mississippi, pp. 8–9. In answer to Mississippi's question, it is a legal remedy which does not fall within the meaning of "suit" for Eleventh Amendment purposes.

■ Thus, as a matter of law, pre-*Seminole,* this court finds that the Eleventh Amendment does not apply to the Bankruptcy Code as a bankruptcy case is not a suit within the scope of the Amendment. The next consideration is the effect of *Seminole* upon this issue.

*Seminole* stated that Congress may abrogate states' immunity if: 1) Congress "unequivocally express[d] its intent to abrogate this immunity," *Seminole Tribe of Florida,* 517 U.S. at 55–56, and n. 2, 116 S.Ct. at 1123, and n. 2) Congress did so "pursuant to a valid exercise of power." *Seminole Tribe of*

---

11. Such instruments of compulsory process may be employed in adversary proceedings arising in or relating to the bankruptcy case. The issue at hand, however, does not concern an adversary proceeding.

12. However, a complaint in an adversary proceeding does ask for relief from the opposing party. *See* Fed R. Bankr.P. 7001. In the instant matter there is no complaint or adversary proceeding.

*Florida,* 517 U.S. at 55, 116 S.Ct. at 1124 (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). However, in *Seminole,* the Court ruled that the "Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Seminole Tribe of Florida,* 517 U.S. at 72–73, 116 S.Ct. at 1131–32, overruling *Pennsylvania v. Union Gas Company,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (which allowed Congressional abrogation of state sovereignty under the Eleventh Amendment based upon the Commerce Clause of Article I). Indeed, the only way currently recognized by the Supreme Court for Congress to abrogate Eleventh Amendment sovereign immunity from suits is through the Fourteenth Amendment. *Seminole Tribe of Florida,* 517 U.S. at 58–60, 116 S.Ct. at 1125 (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)). However, *Seminole* appears to leave open that there may be other ways for Congress to negate the Eleventh Amendment's grant of sovereign immunity to the states.[13]

It is important to realize that *Seminole* does not address bankruptcy cases and involved a federal statute, based upon the Indian Commerce Clause of Article I, which imposes a duty upon a state to negotiate in good faith with a tribe concerning the formation of a compact to regulate gaming. 25 U.S.C. § 2710(d)(1)(C). Further, the statute in question authorized a tribe to bring suit in federal court to compel a state to negotiate. 25 U.S.C. § 2710(d)(7).

Mississippi argues that *Seminole* stands for the proposition that, pursuant to the Eleventh Amendment, the bankruptcy court lacks jurisdiction over it. Examining the decision itself, it appears that *Seminole* has no affect upon federal bankruptcy jurisdiction.[14]

Mississippi relies upon the dissent of Justice Stevens as its basis for arguing that the majority decision in *Seminole* prohibits bankruptcy courts from exercising jurisdiction over the states. In his dissent, Justice Stevens writes that the majority decision "prevents Congress from providing a federal forum for a broad range of actions against States, from those sounding in copyright and patent law, to those concerning bankruptcy, . . . ." *Seminole Tribe of Florida,* 517 U.S. at 77, 116 S.Ct. at 1133 (Stevens, J., dissenting). Mississippi's reliance on Justice Stevens' dissent is misplaced, and not just for the reason that it was a dissent.[15] The majority specifically responded to the dissent, stating:

> Justice Stevens understands our opinion to *prohibit federal jurisdiction over suits to enforce the bankruptcy,* copyright, and antitrust laws *against the States.* He notes that federal jurisdiction over those statutory schemes is exclusive, and therefore concludes that there is "no remedy" for state violations of those federal statutes. Post, at 101 n. 1, 116 S.Ct. at 1145 n.1.

> That conclusion is exaggerated both in its substance and in its significance. . . . *[C]ontrary* to the implication of Justice Stevens conclusion, it has *not* been widely thought that the federal antitrust, bank-

---

**13.** *See Diaz–Gandia v. Dapena–Thompson,* 90 F.3d 609, 616, n. 9 (1st Cir.1996) (holding that the War Powers, under Article I of the Constitution was a valid authority to abrogate the Eleventh Amendment, despite the ruling in *Seminole*).

**14.** This is true, at least outside of adversary proceedings. However, this court notes that one recent Supreme Court decision indicated that when a party files a proof of claim in a bankruptcy case, and then participates in an adversary proceeding, subordinate to that bankruptcy case, certain rights under the Constitution are lost. *See Katchen v. Landy,* 382 U.S. 323, 336–37, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (holding that the Seventh Amendment right to a jury trial is lost when a proof of claim has been filed). This court sees no distinguishing reason why any Eleventh Amendment rights would not also be lost. However, this circumstance is not present in this decision so the issue of the waiver of sovereign immunity within an adversary proceeding where the state has filed a claim is not addressed.

**15.** The Supreme Court has indicated that it is not proper to rely on *dicta* as precedential authority. *See Colgrove v. Battin,* 413 U.S. 149, 157, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973). Using this same rationale, this court holds that it is not proper to rely on a dissent as authority for a proposition of law.

ruptcy, or copyright statutes abrogated the States' sovereign immunity.

*Seminole Tribe of Florida,* 517 U.S. at 73 n. 16, 116 S.Ct. at 1132 n. 16 (emphasis added). In other words, this part of the majority's response to Justice Stevens explains that; according to Justice Stevens, there would be no remedy for state violations of federal bankruptcy law. This might, arguably, be true, but perhaps for reasons which are different from what either the majority or the dissent considered in *Seminole.*

Examining the comments on the two issues, remedy and jurisdiction, raised by the Court in response to the dissent, this court concludes that the response arguably supports a conclusion that *Seminole* does not apply to bankruptcy cases. First, a bankruptcy petition seeks no "traditional" remedy for redress as a state is not compelled to appear in federal court by a citizen in a suit to obtain redress for injuries or damages. A bankruptcy case is such that the bankruptcy court exercises its jurisdiction over the debtor and the property of the estate. *See* 28 U.S.C. § 1334(e) and *Gardner v. New Jersey,* 329 U.S. 565, 577, 67 S.Ct. 467, 91 L.Ed. 504 (1947). By the mere commencement of the case, the bankruptcy court does not acquire jurisdiction over either anyone else or anyone else's property. Thus, it does not acquire jurisdiction over the state, either *in personam* or *in rem.* Thus, it remains that a bankruptcy case is not a "suit" within the meaning of the Eleventh Amendment and the Court's response to Justice Stevens' dissent does not stand for the proposition that *Seminole* applies Eleventh Amendment sovereign immunity to bankruptcy cases. *See also Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821); *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947).

Second, the majority specifically states "contrary to the implication of Justice Stevens' conclusion, it has not been widely thought that the federal ... bankruptcy ... statutes abrogated States' sovereign immuni-

ty." *Seminole Tribe of Florida,* 517 U.S. at 73 n. 16, 116 S.Ct. at 1132 n. 16. Justice Stevens, in his dissent, concluded that the majority "prevents Congress from providing a federal forum for a broad range of actions ... to those concerning bankruptcy...." *Id.* at 77, 116 S.Ct. at 1134. In this part of its refutation of Justice Stevens' concerns, the majority concludes that *Seminole* does not stand, nor was intended to stand, for the proposition that the Eleventh Amendment prohibits bankruptcy courts from exercising jurisdiction over states, as demonstrated by the following two points.

First, considering these statements on their face and by their plain language, the majority states "*contrary* to the implication of Justice Stevens' conclusion...." (Emphasis added). A contrary is an opposite. Justice Stevens concluded that *Seminole* would prohibit bankruptcy jurisdiction over the states. Thus, by its own language, the *Seminole* Court denies that the Eleventh Amendment prohibits federal bankruptcy jurisdiction over the states.

Second, the Court also states that it has never been widely thought that bankruptcy statutes have abrogated states' sovereign immunity. *Id.* at 73 n. 16, 116 S.Ct. at 1132 n. 16. This is true. In the cases previously cited in the instant opinion, the Supreme Court has long ruled that application of bankruptcy statutes to states does not violate state sovereign immunity. *See Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *New York v. Irving Trust Company,* 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933). Indeed, *Seminole* does not overrule these decisions.[16] Thus, there are sufficient statements in *Seminole* and other authorities to conclude that *Seminole* does not, and was not intended to, prohibit federal bankruptcy jurisdiction over the states.

There may be still another consideration with the application of *Seminole* to bankruptcy cases. *Seminole* concerned a statute which provided specific direct relief in the

16. Although *Seminole,* in footnote 16, states that there is no established tradition in the lower federal courts of enforcing the bankruptcy statutes over the states, this statement appears contrary to *Gardner v. State of New Jersey,* 329 U.S. 565, 576, 578, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (citing *Van Huffel v. Harkelrode,* 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256 (1931)), which is not discussed.

form of redress, in federal court, against a state for a violation of federal law. *See* 25 U.S.C. § 2710. In such an action, the state would be a named party, or at least a real party in interest such that the action would be construed to be a suit against the state. *See also Ford Motor Company v. Department of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This is not applicable to a bankruptcy case. In a bankruptcy case, the state would not be a named party nor would the state be a real party in interest.[17] The state may voluntarily participate in the proceeding concerning the *res,* the bankruptcy estate, and such participation constitutes a waiver of sovereign immunity. Thus, the statutory subject matter of *Seminole* (*i.e.,* 25 U.S.C. § 2710 providing a direct federal cause of action against named parties) can be sufficiently distinguished from the statutory subject matter of bankruptcy cases (*i.e.,* 28 U.S.C. § 1334 and 11 U.S.C. § 101 *et seq.* providing for federal jurisdiction over bankruptcy cases) so as to render *Seminole* inapplicable to bankruptcy cases.

Further, Mississippi argues that because the source of the bankruptcy courts and judges is the Bankruptcy Clause of Article I of the Constitution,[18] *Seminole* mandates that Eleventh Amendment immunity must apply. This argument fails for, as a preliminary matter, the Eleventh Amendment does not apply, unless the matter is a "suit". As previously shown, a bankruptcy case is not a "suit" within the meaning of the Eleventh Amendment. Thus, *Seminole* cannot be used to circumvent the requirement that a matter be a "suit" for state sovereign immunity to apply.

Indeed, *Seminole* even implicitly approves of the position that a bankruptcy case is not a "suit" pursuant to the Eleventh Amendment. In footnote 16, the majority states that "This Court never has awarded relief against a State under [bankruptcy] statutory schemes...." *Seminole Tribe of Florida,* 517 U.S. at 73 n. 16, 116 S.Ct. at 1131 n. 16. This statement is true as redress is neither sought nor awarded against a state in the administration of a bankruptcy case. This is highlighted in this case, as confirmation of Barrett's plan would not require Mississippi or any creditor to redress, reimburse or make

---

**17.** The distinction between a nominal party and a real party in interest was first raised in *Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 857–58, 6 L.Ed. 204 (1824). Although Chief Justice Marshall wrote that the Eleventh Amendment was limited to suits where the state was a named party, he inferred that a nominal party substituting for the real party in interest (the state) could trigger the Eleventh Amendment. The Supreme Court explained the distinction with greater clarity in *In Re Ayers,* 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887). In that decision, the Court held that where a named party (the state) does not have an individual interest in the suit, but is only named on behalf of the real party (an individual), to avoid jurisdictional difficulties, then the state will be construed to be the real party in interest. *Id.* at 489–91, 8 S.Ct. 164. *See Pennoyer v. McConnaughy,* 140 U.S. 1, 10, 11 S.Ct. 699, 35 L.Ed. 363 (1891).

Under this definition, it is apparent that there cannot be such a "real party in interest" in a bankruptcy case because of the differences between a bankruptcy case and a traditional two-party, adversarial suit for damages. For a nominal party, under this definition, is one who *substitutes* for the real party in interest. In a bankruptcy case, considering the state as a claimant, the state is not substituting for any of the named parties. There is only one named party: the

debtor. And there can be no question that the debtor is the real party in interest with regard to the bankruptcy case.

However, the Supreme Court provided another perspective from which the concept of a real party in interest could be applied. *Ford Motor Company v. Department of Treasury of Indiana,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). In *Ford Motor Company,* the Court stated that where an action is against a named party (*NOT* the state) for recovery of funds from the state treasury, then the real party in interest will be deemed to be the state. *Id.* at 464, 65 S.Ct. 347. In a bankruptcy case, this definition and application would also not apply, as the debtor who files bankruptcy is not seeking to retrieve funds from the state treasury. Thus, in the instant matter, the State of Mississippi would not be a real party in interest as Barrett is not seeking to obtain funds from Mississippi's treasury. *See also Hoffman v. Connecticut Department of Income Maintenance,* 492 U.S. 96, 102, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (discussing the differences and ramifications between determination by the bankruptcy court in the administration of claims and receiving a money judgment from the state.)

**18.** This Constitutional provision is the source for 28 U.S.C. § 1334, which, in turn, is the source for 11 U.S.C. § 101 *et seq.*

whole Barrett for any injury or damage.[19] Thus, *Seminole* does not conflict with the position that bankruptcy cases are not suits pursuant to the Eleventh Amendment.

Mississippi relies on *In re NVR L.P.*, 206 B.R. 831 (Bankr.E.D.Va.1997), and similar cases which hold that, based on *Seminole*, Congress cannot abrogate state sovereign immunity pursuant to the Eleventh Amendment when the statute is created pursuant to Article I, which is the source of bankruptcy jurisdiction and courts. *See also In re Martinez*, 196 B.R. 225 (D.P.R.1996); *Sparkman v. State of Florida Department of Revenue (In re York–Hannover Developments, Inc.)*, 201 B.R. 137 (Bankr.E.D.N.C.1996); *Sacred Heart Hospital v. State of Pennsylvania Department of Welfare (In re Sacred Heart Hospital)*, 199 B.R. 129 (Bankr.E.D.Pa.1996); *Schulman v. California State Water Resources Control Board (In re Lazar)*, 200 B.R. 358 (Bankr.C.D.Cal.1996); *Ellenberg v. Board of Regents (In re Midland Mechanical Contractors, Inc.)*, 200 B.R. 453 (Bankr. N.D.Ga.1996).

In contrast, Barrett and the Unsecured Creditors' Committee rely on *Wyoming Department of Transportation v. Straight (In re Straight)*, 209 B.R. 540 (D.Wyo.1997), and other cases which hold that Congress can abrogate state sovereign immunity concerning bankruptcy cases through the Fourteenth Amendment, despite the ruling in *Seminole*. *See Mather v. Oklahoma Employment Security Commission (In re Southern Star Foods, Inc.)*, 190 B.R. 419 (Bankr.E.D.Okla. 1995); [20] *Headrick v. State of Georgia (In re Headrick)*, 200 B.R. 963 (Bankr.S.D.Ga.1996).

In the instant decision, the issue of whether the source of bankruptcy jurisdiction is Article I or the Fourteenth Amendment is not applicable for, as demonstrated, the Eleventh Amendment applies only to "suits", not to bankruptcy cases. Thus, these arguments are irrelevant. Indeed, it is the position of this court that the entire line of cases, taking either of these postures, can be said to have overlooked the fundamental issue of the difference between a suit and a bankruptcy case.

Therefore, this court concludes that 11 U.S.C. § 106, is not unconstitutional as the Eleventh Amendment does not apply to bankruptcy cases, for they are not suits under the Eleventh Amendment. Further, *Seminole* does not stand for the proposition that the Eleventh Amendment prohibits federal courts from exercising bankruptcy jurisdiction over states. As 11 U.S.C. § 106 is constitutional and the Eleventh Amendment does not apply to it, its mandated waiver of sovereign immunity on the part of participating states is not constitutionally infirm.[21]

## ISSUE 2

### DID MISSISSIPPI WAIVE SOVEREIGN IMMUNITY BY FILING ITS PROOF OF CLAIM AND PARTICIPATING IN THE CASE?

Mississippi then argues that it has not waived its sovereign immunity by filing its proof of claim and participating in the case.

■ Generally, under the Eleventh Amendment, state sovereign immunity is waived if the state consents to the jurisdiction of the particular court. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). There appear to be at least three ways a state can consent to federal jurisdiction.

■ First, the voluntary appearance of a state in an action in which it has an interest

---

19. However, if the Supreme Court definition of "relief" includes the administration of states' claims then the statement that the Court has never awarded relief in a bankruptcy case is apparently contrary to earlier decisions. *See, e.g., Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *New York v. Irving Trust Company*, 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933).

20. The *Southern Star Foods* decision was pre-*Seminole*, but has been used as authority for post-*Seminole* decisions. *See, e.g., Headrick v. State of Georgia (In re Headrick)*, 200 B.R. 963 (Bankr.S.D.Ga.1996).

21. Mississippi has failed to overcome the presumption of constitutionality of 11 U.S.C. § 106. *O'Gorman & Young, Inc. v. Hartford Insurance Company*, 282 U.S. 251, 257–58, 51 S.Ct. 130, 75 L.Ed. 324 (1931).

has been recognized by the Supreme Court to be a waiver of Eleventh Amendment sovereign immunity. *Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883); *Missouri v. Fiske*, 290 U.S. 18, 24, 54 S.Ct. 18, 78 L.Ed. 145. (1933); *Petty v. Tennessee–Missouri Bridge Commission*, 359 U.S. 275, 276, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).[22] But state law still may limit consent even when there has been an appearance by the state. It is extremely important to note that, in *Clark*, the Court specifically recognized that where the state, as a defendant, voluntarily made an appearance, it waived Eleventh Amendment sovereign immunity. Further, the Court stated that "[i]n the present case the State of Rhode Island appeared in the cause and presented and prosecuted a claim to the fund in controversy, and thereby made itself a party to the litigation to the full extent required for its complete determination." *Clark*, at 448, 2 S.Ct. 878.

■ *Ford Motor Company v. Department of Treasury of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), is the seminal case on statutory and constitutional preservation and waiver of state sovereign immunity. In *Ford Motor Company*, the Court noted that, Indiana had a state constitutional provision authorizing waiver of state sovereign immunity only by a general act of the legislature and that a state official, by appearing in court, could not waive state sovereign immunity unless authorized by a statute. *Id.* at 468–69, 65 S.Ct. 347. Indiana had no

such statute and the state Attorney General only possessed generally delegated powers. Thus, the appearance of the Attorney General to defend against the action did not constitute a valid waiver of sovereign immunity. However, it should be noted that, prior to this decision, Indiana had ruled that because the State appeared and filed a cross-complaint for affirmative relief, the State had given its consent, despite the presence of the state constitutional preservation of sovereign immunity. *Id.* at 467 n. 12, 65 S.Ct. 347 (citing *State v. Portsmouth Savings Bank*, 106 Ind. 435, 7 N.E. 379 (1886)). Thus, it appears that, pursuant to *Ford Motor Company*, even if there is state law which preserves state sovereign immunity, if the state does more than just appear to defend against a claim, but *also files for affirmative relief*, then consent will be held to have been given.[23]

Further, in *Ford Motor Company*, the Court did not overrule *Clark*, which permits consent by mere appearance. Indeed, the Court cited *Clark* in *Ford Motor Company* as standing for the proposition that a state may waive its immunity. *Id.* at 465, 65 S.Ct. 347. Moreover, modern Supreme Court decisions have cited *Clark* without overruling its holding that a state waives sovereign immunity by its appearance. *See, e.g., Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Missouri v. Fiske*, 290 U.S. 18, 24, 54 S.Ct. 18, 78 L.Ed. 145 (1933). And in *Petty*, decided after both *Clark* and *Ford Motor Company*, the Court cited both cases as valid

---

**22.** It should be noted that in *Atascadero,* even though *Clark* was cited, the Supreme Court did not specifically mention the holding in *Clark* that a state could waive sovereign immunity by its mere appearance in the action. However, it is instructive to note that *Clark* was not overruled in *Atascadero* and the options provided by the Court were not exclusive: "A State *may* effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving its immunity to suit in the context of a particular federal program." *Atascadero,* at 238 n. 1, 105 S.Ct. 3142 (emphasis added). The Court did *not state these were the only ways* to do so. Thus, *Clark* is still viable.

**23.** This position has substantial modern support. For example, the Supreme Court has stated "[I]n

the absence of consent a suit in which the *State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.*" *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (emphasis added). The fact that the Court limited the application of the Eleventh Amendment to instances where the state is a named defendant provides strong support for the proposition that the Eleventh Amendment will *not* apply where the state *is not* a named defendant.

Further, in *Gardner,* at 472, 67 S.Ct. 467, the Court, citing *Clark,* specifically stated that once a state has filed a claim, it waives any immunity it might have had. *See also Wiswall v. Campbell,* 93 U.S. (3 Otto) 347, 351, 23 L.Ed. 923 (1876).

precedential authority. *Petty v. Tennessee–Missouri Bridge Commission,* 359 U.S. 275, 276, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

■ Furthermore, in *Fiske,* the Supreme Court specifically stated: "If the State chooses to come into the court as a plaintiff, or to intervene, seeking the enforcement of liens or claims, the State may be permitted to do so, and in that event its rights will receive the same consideration as those of other parties in interest." *Id.* at 28, 54 S.Ct. 18. Thus, it follows that a state that files a proof of claim in a bankruptcy case has waived its sovereign immunity, regardless of limitations created by its own law.

In the context of bankruptcy cases, several modern Supreme Court decisions have affirmed that the mere appearance and participation in a bankruptcy case constitutes a waiver of federal constitutional rights. *See Langenkamp v. Culp,* 498 U.S. 42, 44–45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 57–59, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Katchen v. Landy,* 382 U.S. 323, 336–37, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Each of these cases concerned the waiver of the Seventh Amendment right to trial by jury and they hold that by filing a claim, a party submits to federal bankruptcy jurisdiction.[24] Thus, it is evident that the law is well established that once a claim is filed in a bankruptcy case, the party filing the claim submits to the jurisdiction of the bankruptcy court. Even though these cases concerned the Seventh Amendment, and not the Eleventh Amendment, they still address the question of a waiver of constitutional rights; one of which is state sovereign immunity under the Eleventh Amendment. This court concludes that there are insufficient facts and circumstances to distinguish the waiver of constitutional rights in them with the waiver of sovereign immunity in the instant case.[25]

■ Even if Eleventh Amendment sovereign immunity did apply to bankruptcy cases,

this court finds that once Mississippi filed its proof of claim, and affirmatively participated in the case, it submitted to the jurisdiction of the court and waived any sovereign immunity. *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883); *Missouri v. Fiske,* 290 U.S. 18, 24, 54 S.Ct. 18, 78 L.Ed. 145 (1933); *Ford Motor Company v. Department of Treasury of Indiana,* 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Petty v. Tennessee–Missouri Bridge Commission,* 359 U.S. 275, 276, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). Further, as the Supreme Court stated in *Gardner:* "When the State becomes the actor and files a claim ..., it waives any immunity which it otherwise might have had respecting the adjudication of the claim." *Gardner v. New Jersey,* 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (citing, *inter alia, Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 27 L.Ed. 780 (1883)).

There is an additional possible limitation on consent by the appearance and participation of a state in a legal action. The Supreme Court has ruled that constructive consent is not appropriate for a waiver of constitutional rights. *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman,* Illinois participated in a federal executive program and received benefits in turn, which was the basis for Jordan's argument for constructive consent. The Court did not provide a general definition of constructive consent. Rather, it just responded to Jordan's argument that the State's participation in the federal program amounted to constructive consent to federal court jurisdiction. *Id.* The Court rejected the argument. Thus, for constructive consent to apply, the Court held that the federal statute in question must expressly say that participation in the federal program mandates submission to federal jurisdiction. *Id.*

Where *Edelman* has been cited for the denial of the "constructive consent" argument, the Court has not expanded its original meaning. *See, e.g., Atascadero State Hospi-*

---

**24.** Even if the state does not appear and does not file a proof of claim, the state is still bound by the decision of the bankruptcy courts concerning the estate. *Hoffman v. Connecticut Department of Income Maintenance,* 492 U.S. 96, 102, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989); *New York v. Irving*

*Trust Company,* 288 U.S. 329, 330, 333, 53 S.Ct. 389, 77 L.Ed. 815 (1933).

**25.** *See In re Stoecker,* 202 B.R. 429, 448 (Bankr. N.D.Ill.1996) (arriving at the same conclusion).

tal v. Scanlon, 473 U.S. 234, 238 n. 1, 105. S.Ct. 3142, 87 L.Ed.2d 171 (1985). *See also Parden v. Terminal Railway of the Alabama State Docks Department,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) *overruled in part by Welch v. Texas Highways & Public Transportation Department,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987); *Employees v. Missouri Public Health & Welfare Department,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Welch v. Texas Highways & Public Transportation Department,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). Although these subsequent decisions have focused on the constructive consent doctrine while ignoring the doctrine of consent by appearance, thus arguably implying that consent by appearance is not valid, none of these decisions have overruled either *Clark, Fiske* or *Gardner.* Thus, the appearance and participation of Mississippi in this case is still a valid waiver of sovereign immunity under *Clark, Fiske* and *Gardner* and the doctrine of consent by appearance and any contrary interpretation or holding would have no significant precedential foundation.

Mississippi, relying on *In re NVR L.P.,* 206 B.R. 831 (Bankr.E.D.Va.1997), argues that participation in a bankruptcy case is not an effective waiver of state sovereign immunity where a state statute preserves that right. Mississippi contends that it has just such a statute, referring to 1984 Miss. Laws 495, Section 3(4), citing *Papasan v. Allain,* 478 U.S. 265, 276 n. 10, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Further, Mississippi claims that it has not waived "its sovereign immunity due to its position as a defendant in the current bankruptcy proceeding." *See* Supplemental Brief of Mississippi, p.13. Mississippi also claims that it has preserved its sovereign immunity in its filings.

This court has examined the Mississippi Constitution and finds no provision which explicitly preserves or waives state sovereign immunity nor does Mississippi cite any such provision, which would be similar to the provision of the Indiana Constitution in *Ford Motor Company.* Mississippi has claimed the benefit of a statute preserving state sovereign immunity under the Eleventh Amendment. The cited statute, which is part of a general act concerning state immunity, reads: "Nothing contained in this act shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 1984 Miss. Laws 495, Section 3(4).[26]

In response to Mississippi's argument, that its filing of a proof of claim does not waive its sovereign immunity, this court must disagree. The filing of a proof of claim is not merely a defense, but is an affirmative claim for relief. The State of Mississippi, by filing the proof of claim, has asked the court to provide it with relief: payment of the debt by the debtor, Barrett. *See Gardner v. New Jersey,* 329 U.S. 565, 573–74, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (stating *"if the claimant is a State, the procedure of proof and allowance is not transmitted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the Debtor."* (emphasis added)). Thus, under *Ford Motor Company* and *Pennhurst State School & Hospital,* because Mississippi has filed for affirmative relief and is not just defending a legal action, Mississippi has waived its sovereign immunity.[27] Thus, despite Mississippi's statute preserving its state sovereign immunity, this court concludes that by its act of filing for affirmative relief with a proof of claim, Mississippi has waived any sovereign immunity it may have had.

This conclusion regarding waiver would be valid even if a bankruptcy case should be construed to be a "suit" within the Eleventh Amendment, and it has the support of numerous post-*Seminole* bankruptcy decisions.

---

**26.** Reading this statute, by its plain language, it appears to add nothing to the immunity already granted by the Eleventh Amendment, nor could it. It just states that this particular act does not waive immunity. Further, this statute does not affirmatively preserve state sovereign immunity as did the provision of the Indiana Constitution cited in *Ford Motor Company.*

**27.** *Ford Motor Company v. Department of Treasury of Indiana,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

*See, e.g., In re Martinez,* 196 B.R. 225, 229–30 (D.P.R.1996); *Ossen v. State of Connecticut Department of Social Services (In re Charter Oak Associates* ), 203 B.R. 17, 21–22 (Bankr.D.Conn.1996); *Sparkman v. State of Florida Department of Revenue (In re York–Hannover Developments, Inc.),* 201 B.R. 137, 142 (Bankr.E.D.N.C.1996); *Sacred Heart Hospital v. State of Pennsylvania Department of Welfare (In re Sacred Heart Hospital* ), 199 B.R. 129, 134 (Bankr.E.D.Pa.1996); *Schulman v. California State Water Resources Control Board (In re Lazar),* 200 B.R. 358, 377 (Bankr.C.D.Cal.1996); *Koehler v. Iowa College Student Aid Commission (In re Koehler),* 204 B.R. 210, 217–20 (Bankr. D.Minn.1997); *Burke v. State of Georgia (In re Burke),* 203 B.R. 493, 497–98 (Bankr. S.D.Ga.1996); *Headrick v. State of Georgia (In re Headrick),* 203 B.R. 805, 809–10 (Bankr.S.D.Ga.1996); *Wyoming Department of Transportation v. Straight (In re Straight),* 209 B.R. 540, 555–58 (D.Wyo.1997).

Mississippi also characterizes itself as a "defendant" in this case, apparently in an attempt to support its claim for Eleventh Amendment protection. This posture lacks any foundation as Mississippi has not been sued as a defendant. Moreover, Mississippi has not presented any argument or authority to support this contention.

 Mississippi also presents the argument that because it "reserved" state sovereign immunity in its filings, it should somehow be granted Eleventh Amendment protection.[28] Apparently, Mississippi, by this argument, is trying to equate the legal binding force of its pleadings to that of a statute or constitutional provision. This court rejects this argument for the Bankruptcy Code, including 11 U.S.C. § 106, which mandates a waiver of state sovereign immunity by the filing of a proof of claim, is constitutional. Thus, as a matter of application of the Supremacy Clause,[29] a state statute (never mind a pleading) will not preempt a federal statute. Indeed, Mississippi was on, at least, constructive notice that filing a proof of claim constitutes a waiver. *See* 11 U.S.C. § 106. Therefore, this court rules that the State of Mississippi, by filing its proof of claim, has waived any sovereign immunity.

 The second way that a state may waive sovereign immunity is through state law. When a state grants consent by statute, it must do so "by the most express language." *Murray v. Wilson Distilling Company,* 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909). The waiver in the state statute must be so precise that consent to sue the state in state courts will not be construed to extend to consent to sue the state in federal courts. *Great Northern Life Insurance Company v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944). Nor will a general consent to sue the state in any court be construed as permission to sue the state in federal court. *Employees v. Missouri Public Health & Welfare Department,* 411 U.S. 279, 283, 285, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Welch v. Texas Highways & Public Transportation Department;* 483 U.S. 468, 478, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). As neither Barrett nor the Unsecured Creditors' Committee claim Mississippi has waived state sovereign immunity in this manner, it will not be examined.

 The third way that a state may waive its sovereign immunity is by constructive consent. As discussed previously, the Supreme Court has ruled that participation by a state in a federal program, *i.e.,* a federal

---

**28.** There are bankruptcy decisions holding that where creditors make "conditional" filings of proofs of claim, reserving constitutional rights but such filings clearly waive the right in question, the constitutional right is, nevertheless, deemed to be waived despite the express reservation of the right by the creditor. *See* Charles Tabb, *The Law of Bankruptcy* 249 (Foundation Press 1997) (citing *Travellers International AG v. Robinson,* 982 F.2d 96 (3rd Cir.1992), *cert. denied,* 507 U.S. 1051, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993)). This court expressly adopts this rule and holds that Mississippi cannot have it both ways. Mississippi was aware that filing a proof of claim would waive sovereign immunity, thus, its purported reservation of Eleventh Amendment sovereign immunity is without affect.

**29.** U.S. Const. art. VI, cl. 2. *See also New York v. Irving Trust Company,* 288 U.S. 329, 333, 53 S.Ct. 389, 77 L.Ed. 815 (1933); *International Shoe Company v. Pinkus,* 278 U.S. 261, 264, 266, 49 S.Ct. 108, 73 L.Ed. 318 (1929).

executive branch program which provides aid to the state, does not amount to "constructive consent" such that the participation amounts to a waiver of sovereign immunity under the Eleventh Amendment and consent to jurisdiction of the federal courts. *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238 n. 1, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Indeed, the Court ruled that constructive consent of this nature, where submission to federal jurisdiction is not expressly stated in the federal statute, should not be used for the waiver of constitutional rights. However, *Edelman* was not the death knell of the doctrine of constructive consent.

In *Parden v. Terminal Railway of the Alabama State Docks Department,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) *overruled in part by Welch v. Texas Highways & Public Transportation Department,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), the Supreme Court clarified the constructive consent doctrine. In *Parden,* the Court ruled that where a statute permits a state to participate in a federal program (in *Parden* it was the Federal Employers' Liability Act—FELA—45 U.S.C. §§ 51, 56) and where that statute permits suit to be filed in federal court, and when the state, in fact, participates in the program, the state has constructively consented to federal jurisdiction. *Id.* at 195–98, 84 S.Ct. 1207.

▆▆▆ However, *Welch* overruled *Parden* to the extent that any such waiver by the states of their sovereign immunity "must be expressed in unmistakably clear language . . . ." *Welch,* at 478, 107 S.Ct. 2941. Thus, the test for "constructive consent" has two prongs: 1) Congress must have stated in clear and unmistakable language the intent that the state will be liable in federal court if the state participates in the federally regulated conduct and 2) the state voluntarily engages in the federally regulated conduct. It should also be noted that the *Welch* decision did not involve a question of Eleventh Amendment immunity. *Id.* at 478 n. 8, 107 S.Ct. 2941.

▆▆▆ In the instant matter, there is no doubt that 11 U.S.C. § 106 presents just such a clear and unmistakable intent on the part of Congress that if a state files a claim in a bankruptcy case, it waives its sovereign immunity.[30] This court has already demonstrated that the Eleventh Amendment does not apply to bankruptcy cases. Furthermore, as Mississippi has filed a proof of claim, it follows that Mississippi has, pursuant to 11 U.S.C. § 106, validly waived any sovereign immunity it may have had under the doctrine of constructive consent. For, Mississippi had the option not to participate in the bankruptcy case, yet it voluntarily chose to participate and consequently constructively also consented to the jurisdiction of the bankruptcy court, with the knowledge that Congress had expressly mandated the waiver of sovereign immunity in 11 U.S.C. § 106.

Although it may be argued that *Seminole* mandates that the Eleventh Amendment applies to this case because the Bankruptcy Code is based on Article I of the Constitution, such an argument simply fails because a bankruptcy case is not a "suit" within the meaning of the Eleventh Amendment. This court also concludes that by its act of appearing and requesting affirmative relief, the State of Mississippi has given its consent to the jurisdiction of the bankruptcy court and has waived its sovereign immunity. This is so in spite of *Seminole's* ruling concerning Article I and the Eleventh Amendment.

Therefore, alternatively and in addition to the ruling on consensual waiver, this court concludes that the doctrine of "constructive consent" also applies and that Mississippi has

---

**30.** 11 U.S.C. § 106 was amended in 1994 (*See* 1994 Bankruptcy Reform Act) to address the rulings of the U.S. Supreme Court that the previous statute had not sufficiently and clearly stated Congress' intent to abrogate state sovereign immunity. *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Hoffman v. Connecticut Department of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989).

It is interesting to note that *Hoffman,* which ruled that the prior version of 11 U.S.C. § 106 was constitutionally infirm, acknowledged that once a state has filed a proof of claim, it waives its sovereign immunity.

constructively consented to jurisdiction by filing its proof of claim, pursuant to the clear and unmistakable language expressing the intent of Congress in 11 U.S.C. § 106.[31]

### ISSUE 3

### SHOULD MISSISSIPPI BE ALLOWED TO WITHDRAW ITS PROOF OF CLAIM AND, IF SO, WHAT IS THE AFFECT OF WITHDRAWAL?

Mississippi moves, in the alternative, to withdraw its proof of claim, pursuant to Fed. R. Bankr.P. 3006.

Fed. R. Bankr.P. 3006 allows a creditor to withdraw a proof of claim, as a matter of right, unless, *inter alia,* an objection has been filed to the claim, the creditor has accepted or rejected a plan, or has otherwise significantly participated in the case. In this case, at least one of the enumerated actions have occurred which negate Mississippi's ability to withdraw its proof of claim as a matter of right: Mississippi has participated significantly in the case. However, in such circumstances, the rule does allow the court to permit a creditor to withdraw as a matter of discretion.

Mississippi presents no reason, argument, or authority to justify its request that it be permitted to withdraw its proof of claim. Mississippi merely presents the request.

This court finds persuasive the position argued by the Unsecured Creditors' Committee, that once a waiver of rights has been made, it cannot be undone. *See* Brief of Unsecured Creditors' Committee, at pp. 18–19. This position has extensive support throughout American jurisprudence. *Thompson v. Phenix Insurance Company,* 136 U.S. 287, 10 S.Ct. 1019, 34 L.Ed. 408 (1890); *Sturm v. Sturm,* 61 Ohio St.3d 298, 574 N.E.2d 522 (1991); *MacKnight & Hoffman, Inc. v. Programs for Achievement in Reading, Inc.,* 96 R.I. 345, 191 A.2d 354 (1963); *Engstrom v. Farmers & Bankers Life Insurance Company,* 230 Minn. 308, 41 N.W.2d 422 (1950); *Thomas N. Carlton Estate v. Keller,* 52 So.2d 131 (Fla.1951). *See*

*also* 28 Am.Jur.2d *Estoppel & Waiver,* § 156 at 838–39 (1966); 92 C.J.S.2d *Waiver* at 1069 (1955); 91 Or. 59, 174 P. 1161, 3 A.L.R. 205 (1918). Therefore, this court concludes that withdrawal would be of no affect and denies Mississippi's motion to withdraw its proof of claim.

### CONCLUSION

Accordingly, this court concludes that Mississippi does not have sovereign immunity in this case and denies the relief requested in Mississippi's motion.

---

**31.** This Memorandum and Order does not address the issue of whether the Eleventh Amendment would apply when a state is named as a

defendant in an adversary proceeding arising in or relating to a bankruptcy case. *See* Fed. R. Bankr.P. 7001.