975 P.2d 156

**STATE of Arizona, Appellee,**

v.

**Charlotte MAHANEY, Appellant.**

**No. 1 CA–CR 98–0256.**

Court of Appeals of Arizona, Division 1, Department C.

March 16, 1999.

Janet A. Napolitano, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and John L. Saccoman, As-

sistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Paul J. Prato, Maricopa Public Defender, Phoenix, for Appellant.

## OPINION

BERCH, Judge.

¶1 Charlotte Mahaney ("Defendant") appeals from her conviction and sentence for criminally negligent child abuse on the grounds that the child's health was not actually endangered by removing her from the hospital. Because we agree that Defendant's acts endangered the child, we affirm the conviction.

## BACKGROUND

¶2 The relevant facts are undisputed. On October 6, 1995, Lauren Smith, a one month old infant, was admitted to St. Joseph's Hospital's pediatric intensive care unit. Dr. Farley, the medical director for the Child Abuse Assessment Center, diagnosed Lauren as suffering from seizures, a subdural hematoma, two broken ribs, chip fractures on her knees, retinal hemorrhages in both eyes, and brain damage, resulting from Shaken Baby Syndrome. Dr. Farley placed Lauren on Phenobarbital and Dilantin to control her seizures. Approximately two days later, Lauren's seizures subsided and she was moved from the intensive care unit. On October 12, the doctors took Lauren off Dilantin, but continued her on Phenobarbital.

¶3 Because Lauren was diagnosed with Shaken Baby Syndrome, Child Protective Services ("CPS") became involved in Lauren's case and secured a foster home where Lauren would be taken upon her release from the hospital. Lauren's parents were advised that Lauren would be placed in a foster home because CPS did not know who had abused the child and the parents had not been eliminated as suspects.

¶4 Before CPS could take custody of Lauren, Lauren's father, Lauren's grandmother, and Defendant, Lauren's great-grandmother, conspired to remove Lauren

from the hospital and spirit her out of state. At 4:00 a.m. on October 13, they took Lauren, knowing that they were doing so "against medical advice." Lauren's father left a note at the nurse's station, advising that he had taken the child. Defendant took the note and handed it to a nurse nearby with instructions to give it to Lauren's nurse. Lauren's father and grandmother took Lauren to California, ostensibly to be evaluated by an independent neurologist. After being removed from the hospital, Lauren was deprived of her anti-seizure medication.

¶5 When Lauren was returned to St. Joseph's Hospital on October 21, no new injuries were detected. She was no longer having seizures, and she was not represcribed any anti-seizure medication.

¶6 Lauren's father, grandmother, and Defendant were charged with reckless child abuse under circumstances likely to produce death or serious physical injury, in violation of Arizona Revised Statutes Annotated ("A.R.S.") section 13–3623(B)(2) (Supp.1992),[1] a class three felony.

¶7 During the jury trial, Doctors Kerrigan and Farley testified that the sudden discontinuance of both of her seizure medications exposed Lauren to a high possibility of relapsing and reseizing. They explained that if she reseized while she was eating, she could aspirate food into her lungs and develop respiratory problems. Dr. Farley testified that a possible consequence of reseizing is that a child can stop breathing. Dr. Kerrigan testified that children who reseize for an extended period of time may suffer further brain damage. According to Dr. Kerrigan, Lauren should have remained in the hospital for monitoring for at least another twenty-four to forty-eight hours to determine whether her condition had stabilized.

¶8 Defendant moved for a judgment of acquittal pursuant to Rule 20 of the Arizona Rules of Criminal Procedure. The motion was denied, and Defendant was ultimately found guilty of the lesser included offense of negligent child abuse under circumstances other than those likely to produce death or

1. This subsection was amended in 1996 to make    minor grammatical corrections.

serious physical injury. *See* A.R.S. § 13–3623(C)(3) (Supp.1992).[2]

¶ 9 Defendant filed this timely appeal.

## DISCUSSION

¶ 10 Defendant raises one issue on appeal: Was there sufficient evidence to support the verdict?

¶ 11 Section 13–3623(C)(3) prohibits the criminally negligent endangerment of a child's health:

> Under circumstances other than those likely to produce death or serious physical injury to a child ..., any person who ... having the care or custody of such child[ [3] ] ..., causes or permits ... such child ... to be placed in a situation where its person or health is endangered is guilty of an offense as follows:
>
> . . . .
>
> 3. If done with criminal negligence, the offense is a class 6 felony.

(Footnote added.) Defendant concedes that "considered in the light most favorable to sustaining the verdict[,] ... there was a potential for danger to Lauren's health when she was removed from the hospital without the continued use of the antiseizure medication (Phenobarbital)." However, Defendant argues that section 13–3623(C) applies only if a child's health "*is* endangered," not if it "*may be* endangered." She asserts that the term endangerment does not encompass "potential harm," but rather refers only to "actual danger." According to Defendant, because Lauren did not reseize when the Phenobarbital was withheld, the potential for danger never developed and Lauren's health was never actually endangered. We do not believe section 13–3623(C) permits such an interpretation.

¶ 12 When interpreting a statute, we must first look to its language, the "best and most reliable index" of its meaning. *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Unless the legislature clearly expresses an intent to give a term a special meaning, we give the words used in statutes their plain and ordinary meaning. *See State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). In determining the ordinary meaning of a word, we may refer to an established and widely used dictionary. *See State v. Wise,* 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983).

¶ 13 Endanger means "to expose to danger; imperil." Webster's College Dictionary 430 (2d ed.1997). Danger is a risk or peril. *See id.* at 335. A peril is "1. exposure to injury, loss, or destruction; grave risk; jeopardy. 2. something that causes or may cause injury, loss, or destruction." *Id.* at 969; *see also* the Compact Edition of the Oxford English Dictionary 697 (1971). A risk is an "exposure to the *chance* of injury or loss." Webster's at 1121 (emphasis added); *see also* Oxford at 714. Thus, by its definition, a danger includes a potential harm.

¶ 14 Defendant also argues that while "endanger" encompasses harms that are probable, it does not include harms that are merely possible. Defendant offers no authority for this position. Rather, she argues in circular fashion that the harm here was not probable because it did not occur; Lauren did not reseize. Thus, when Defendant argues that endanger means probable harm, she suggests that there is no probable harm unless there is actual harm. However, to construe "endanger" to mean only actual harm would render the statute redundant. Section 13–3623(C) already punishes individuals who inflict actual harm upon children.

¶ 15 If the legislature had intended to prohibit probable harm rather than possible harm, it would have clearly said so. For example, in section 13–3623(B), the legislature addressed child abuse "under circumstances likely to produce death or serious physical injury." We have defined "likely" as meaning probable rather than possible. *See State v. Johnson,* 181 Ariz. 346, 350, 890

---

**2.** This subsection was also amended in 1996 to make minor grammatical corrections. The 1996 version is still in effect today.

**3.** Because Lauren was in her father's care and custody, the care and custody element of the offense as to Defendant was satisfied through the allegation of accomplice liability.

P.2d 641, 645 (App.1995) (citing *State v. Greene,* 168 Ariz. 104, 108, 811 P.2d 356, 360 (App.1991)). The legislature could have done the same here. Instead, it chose the term "endanger," which, by definition, means to expose to potential harm.[4]

¶ 16 The term "endanger" is employed elsewhere in Arizona statutes. For example, the crime of endangerment is defined as "recklessly endangering another person with a substantial risk of imminent death or physical injury." A.R.S. § 13–1201(A) (1989). By adding the phrase "substantial risk of imminent death" or injury, the legislature demonstrates that the term "endanger," standing alone, does not mean that the risk of harm to which one is exposed must be substantial or the potential danger immediate. Our duty is to construe statutes so as to give effect to all sections thereof. *See Pima County by City of Tucson v. Maya Constr. Co.,* 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988). Defining "endanger" as posing a risk of harm accomplishes this goal and comports with the common understanding of the word. To interpret "endanger" to mean substantial or likely risk of harm would render the added phrase redundant.

¶ 17 Defining endanger as potential harm is also consistent with other cases interpreting section 13–3623. In *Greene,* a mother was charged with child abuse. 168 Ariz. at 105, 811 P.2d at 357. There, the children were living in conditions of filth and squalor. Three handguns were found in the residence, the furnace had been turned off, and the home festered with dog feces and urine, rotting food, and roaches. *See id.* at 105–06, 811 P.2d at 357–58. The daughter had even seen her mother cooking cocaine in the kitchen. *See id.* at 106, 811 P.2d at 358. In ruling that the trial court erred by not grant-

ing the mother's Rule 20 motion on the charges of child abuse under circumstances likely to produce death or serious physical injury, the Court noted that the evidence did not show that the children had suffered or were likely to suffer serious physical injury. *See id.* at 108, 811 P.2d at 360. In passing, the Court stated that there was only "a *potential* for harm" and ultimately upheld the mother's convictions on the lesser included offense of endangering her children under conditions not likely to produce death or serious physical injury. *Id.* at 107, 108, 811 P.2d at 359, 360; *cf. State v. Deskins,* 152 Ariz. 209, 731 P.2d 104 (App.1986) (Court upheld constitutionality of section 13–3623(C) and affirmed conviction where children were not actually injured, but were exposed to possible danger from being barefoot in home with animal feces, nails, and leaking portable toilet); *accord In re A.E.,* 163 Wis.2d 270, 471 N.W.2d 519, 521 (App.1991) (court upheld jury instruction defining "endanger" as causing "potential harm to the child").

¶ 18 Accordingly, we hold that the term "endanger" in section 13–3623 means to subject to potential harm. Because Defendant concedes that Lauren was subjected to potential harm, we affirm Defendant's conviction and sentence.

WILLIAM F. GARBARINO, Presiding Judge, and SUSAN A. EHRLICH, Judge, concur.

---

4. Our definition of "endanger" requires more than the ordinary danger to which children are exposed on a daily basis. However, we need not reach that issue here because there was ample medical testimony indicating that the sudden discontinuance of Lauren's anti-seizure medications exposed her to a high possibility of reseizing, which could have caused serious and permanent injury.