129 Nev., Advance Opinion 56

IN THE SUPREME COURT OF THE STATE OF NEVADA

JOON S. MOON; AND PATTERSON
LABORATORIES, INC., A MICHIGAN
CORPORATION,
Appellants,
vs.
MCDONALD, CARANO & WILSON
LLP, A NEVADA LIMITED LIABILITY
PARTNERSHIP,
Respondent.

No. 58720

FILED

AUG 0 1 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

Appeal from a district court judgment dismissing appellants' complaint in a legal malpractice action. Second Judicial District Court, Washoe County; Steven P. Elliott, Judge.

*Affirmed.*

Carl M. Hebert, Reno,
for Appellants.

Piscevich & Fenner and Margo Piscevich and Mark J. Lenz, Reno,
for Respondent.

---

BEFORE PICKERING, C.J., HARDESTY and SAITTA, JJ.

*OPINION*

By the Court, HARDESTY, J.:

The statute of limitations for a professional malpractice claim against an attorney commences on the date the plaintiff discovers, or

13-22592

through due diligence should have discovered, the material facts that constitute the cause of action. NRS 11.207(1). The statutory limitation period for a claim of legal malpractice involving the representation of a client during litigation does not commence until the underlying litigation is concluded. *Hewitt v. Allen*, 118 Nev. 216, 221, 43 P.3d 345, 348 (2002). In this appeal, we must determine whether an attorney's alleged negligence in representing a creditor in the non-adversarial parts of a bankruptcy proceeding constitutes litigation malpractice causing the so-called *Hewitt* litigation tolling rule to apply. We conclude that it does not.

## FACTS AND PROCEDURAL HISTORY

Appellant Patterson Laboratories, Inc. (PLI), operated a manufacturing facility in Phoenix, Arizona, and expanded its operations with the purchase of land and a building in Goodyear, Arizona. PLI later conveyed the Goodyear building and real property to its president and principal shareholder, appellant Joon S. Moon. Patterson West, Inc. (West), purchased PLI's Goodyear operations; however, Moon retained ownership of the facility and real property, and West agreed to lease the Goodyear facility from Moon.

West executed a promissory note for $1,410,000, secured by certain equipment, inventory, and other personal property sold to West and located at the Goodyear facility. West, which changed its name to Sierra International, Inc. (Sierra), later defaulted on the promissory note and the lease with Moon. Sierra filed a Chapter 7 voluntary petition in bankruptcy court in 2001, and appellants hired respondent McDonald Carano Wilson LLP (MCW) in July 2002 to represent them in Sierra's bankruptcy action.

In the bankruptcy case, appellants instructed MCW to have the collateral removed from the Goodyear facility so that the facility and real property could be sold without the equipment on the premises. Allegedly, unbeknownst to appellants, MCW negotiated with the bankruptcy trustee and counsel for Sierra to permit PLI to take possession of the personal property secured as collateral. Later, in November 2002, pursuant to a stipulation by the attorneys and trustee, the lease of the Goodyear facility was terminated, and PLI was permitted to take possession of the collateral. MCW's representation of appellants ended in February 2003, and on October 21, 2008, the bankruptcy court entered its final decree and Sierra's bankruptcy case was closed.

Moon also filed a district court action seeking relief for breach of the promissory note executed by West and indemnity for an action filed by the City of Goodyear against Moon based on a chemical spill that occurred while Sierra was operating the Goodyear facility. Sierra and the other defendants in that action filed a motion for partial summary judgment, requesting that the amount owed on the promissory note and guarantee be offset by the value of the collateral located at the Goodyear facility that had been returned to PLI. Subsequently, on April 27, 2006, the district court issued an order stating that upon appellants' possession of the collateral, they were required to dispose of the collateral in a commercially reasonable manner, and all related proceeds were to offset the remainder of the debt owed on the note. The district court ultimately awarded damages to appellants, less the offset for the value of the collateral returned to PLI. Appellants appealed, and this court dismissed the matter pursuant to the parties' stipulation on February 17, 2009.

Meanwhile, on November 3, 2006, appellants filed an action against MCW, alleging professional negligence, breach of contract, and vicarious liability (first complaint) arising from its representation of appellants in Sierra's bankruptcy action. In 2008, the district court dismissed the lawsuit without prejudice because appellants had failed to comply with the requirements of NRCP 16.1(e)(2). Appellants appealed that decision, and this court affirmed.

On October 20, 2010, appellants filed a second action against MCW (second complaint), reasserting the claims in their first complaint. In March 2011, MCW filed a motion to dismiss the second complaint pursuant to NRCP 12(b)(5), arguing that the case was time-barred under the applicable statute of limitations, NRS 11.207(1). MCW argued that NRS 11.207(1) governs appellants' professional malpractice claim, and, based on the record, the appropriate accrual date is November 3, 2006, the date of the filing of the first complaint. In their opposition, appellants argued that *Hewitt* governs the claim, and the appropriate accrual date is either February 17, 2009, the date of the dismissal of the appeal in the district court case, or October 21, 2008, the date of the final decree in the bankruptcy case.

In April 2011, the district court granted MCW's motion. In its order, the district court rejected February 17, 2009, as the accrual date because the alleged action constituting malpractice did not occur as part of the state court case. It also rejected October 21, 2008, as the accrual date, citing *Cannon v. Hirsch Law Office, P.C.*, 213 P.3d 320, 328 (Ariz. Ct. App. 2009), and holding that *Hewitt* was inapplicable because a bankruptcy proceeding does not constitute litigation. It then held that November 3,

2006, was the appropriate accrual date because NRS 11.207(1) governed the claim and appellants were cognizant of the material facts that made up their current malpractice action as early as that date. Because appellants filed their second complaint on October 20, 2010, the district court concluded that the complaint was untimely and the statute of limitations barred its consideration. This appeal followed.

## DISCUSSION

"This court reviews de novo a district court's order granting a motion to dismiss, and such an order will not be upheld unless it appears beyond a doubt that the plaintiff could prove no set of facts . . . [that] would entitle him [or her] to relief." *Munda v. Summerlin Life & Health Ins. Co.*, 127 Nev. ___, ___, 267 P.3d 771, 774 (2011) (alterations in original) (internal quotations omitted).

*The district court did not err by granting MCW's motion to dismiss based upon NRS 11.207(1)*

NRS 11.207(1) sets forth the statute of limitations for a professional malpractice claim and contains a so-called "discovery rule": "[a]n action against an attorney . . . to recover damages for malpractice . . . must be commenced . . . within 2 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action." The timely filing of a professional malpractice claim may be subject to the litigation malpractice tolling rule. In *Hewitt v. Allen*, this court held that

> [i]n the context of litigation malpractice, that is,
> legal malpractice committed in the representation
> of a party to a lawsuit, damages do not begin to
> accrue until the underlying legal action has been

resolved. Thus, when the malpractice is alleged to have caused an adverse ruling in an underlying action, the malpractice action does not accrue while an appeal from the adverse ruling is pending.

118 Nev. at 221, 43 P.3d at 348 (footnote omitted).

On appeal, appellants argue that the district court erred by holding that a bankruptcy proceeding does not constitute litigation. They rely on *Guillot v. Smith*, 998 S.W.2d 630 (Tex. App. 1999), in support of their argument.[1] MCW contends that, based on *Cannon*, the district court properly ruled that bankruptcy proceedings do not constitute litigation. Alternatively, it argues that appellants' reliance on *Guillot* is misplaced.

*Non-adversarial bankruptcy proceedings do not constitute litigation for purposes of the litigation malpractice tolling rule*

Whether bankruptcy proceedings constitute litigation for purposes of the litigation malpractice tolling rule is an issue of first impression for this court, and we thus examine how other jurisdictions have addressed the issue.

In *Cannon*, an attorney was retained to protect a creditor's interests in a Chapter 13 bankruptcy action. 213 P.3d at 322. After the

---

[1]Appellants also cite to two other cases to support their argument that other jurisdictions have virtually all held that bankruptcy proceedings constitute litigation. However, our review of those cases reveals that only one of the cited cases supports their argument. *See Kellogg v. Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A.*, 807 So. 2d 669, 672 (Fla. Dist. Ct. App. 2001) (applying the litigation malpractice rule to a professional malpractice claim arising from bankruptcy proceedings).

 

bankruptcy action ended, the creditor filed a complaint against the attorney, asserting a claim of professional malpractice based on the attorney's allegedly improper representation in the bankruptcy proceedings. *Id.* at 323. Like Nevada, Arizona has a general discovery rule and a litigation malpractice tolling rule. *Id.* at 323-24. The trial court applied the discovery rule and dismissed the creditor's complaint as untimely. *Id.* at 323.

On appeal, the *Cannon* court recognized that bankruptcy proceedings may contain both adversarial and non-adversarial portions and held that "an attorney's alleged negligence while representing a creditor in the *non-adversarial portions* of bankruptcy proceedings does not occur in the course of 'litigation,' as that term is used for purposes of the accrual of an attorney malpractice action." *Id.* at 325, 327-28 (emphasis added). It further held that "[t]here is a bright-line test to distinguish between the non-adversarial and adversarial portions of a bankruptcy proceeding: adversarial proceedings begin when a creditor files a complaint in a bankruptcy action." *Id.* at 328 (citing Fed. R. Bankr. P. 7003 ("Commencement of Adversary Proceeding")). It then affirmed the trial court's decision to apply the discovery rule because, although the bankruptcy action was converted into a Chapter 7 proceeding, the creditor never filed a complaint in the bankruptcy proceeding. *Id.* at 322-23, 328.

Although MCW, as counsel for appellants, rejected the unexpired lease, the record here indicates that the rejection of the unexpired lease was resolved by stipulation of the parties and no adversarial proceeding was filed. By definition, the proceedings are non-adversarial. Thus, the proceeding constitutes an uncontested matter

because MCW and the appellants resolved the rejection without the filing of a complaint in the bankruptcy action.[2]

We conclude that the lease rejection did not constitute an adversarial proceeding. Thus, applying the *Cannon* court's analysis we adopt today to the facts of this case, we conclude that Sierra's bankruptcy action did not constitute an adversarial proceeding. The district court therefore properly granted MCW's motion to dismiss pursuant to the discovery rule articulated in NRS 11.207(1). *See Cannon*, 213 P.3d at 322-23, 328 (upholding application of the discovery rule in the absence of a complaint).

Appellants rely on *Guillot*, arguing that the district court erred by holding that a bankruptcy proceeding does not constitute litigation. In *Guillot*, the Texas Court of Appeals was not presented with the question of whether a bankruptcy proceeding constituted "litigation" for purposes of the litigation malpractice tolling rule. 998 S.W.2d at 632 n.2. Nevertheless, it noted that

---

[2]Additionally, appellants argue that under the Federal Rules of Bankruptcy Procedure (FRBP) Sierra's bankruptcy action was adversarial in nature, and thus constituted litigation. Appellants refer to the rejection of the lease and specifically contend that under FRBP 6006, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014," and Rule 9014 sets forth the procedures for seeking relief "[i]n a contested matter." We determine that these rules that appellant relies on address the procedure for bankruptcy proceedings that are contested. However, because we determine that the rejection of the lease was not a contested matter and thus this was not a contested bankruptcy proceeding, this argument lacks merit.

a bankruptcy proceeding is 'litigation' [because] . . . [t]he client would still be forced to assert inconsistent positions in the bankruptcy and malpractice action, and be left to either hire new counsel or continue to allow an attorney who may have committed malpractice to represent him in the underlying action.

*Id.* The court held that "the statute of limitations on [the client's] malpractice claim against [the attorney] was tolled during the pendency of [the attorney's] representation of [the client] in an ongoing bankruptcy proceeding." *Id.* at 633.

Appellants contend that *Guillot* supports their argument that their malpractice claims were tolled until the February 17, 2009, dismissal of the appeal in the district court case or the October 21, 2008, final decree in the bankruptcy case. We determine that appellants' reliance upon *Guillot* is misplaced. The *Guillot* court's discussion of the potential application of the litigation malpractice tolling rule in that case was based on a presumption of the attorney's continued representation of the client. It is undisputed by the parties that MCW only represented appellants in Sierra's bankruptcy action from July 2002 to February 2003, when it was disqualified from representing appellants by the bankruptcy court. Appellants' professional malpractice claim would therefore not be tolled by the litigation malpractice tolling rule after February 2003, even if this court were to conclude that the bankruptcy proceeding in this case qualified as litigation.

For the foregoing reasons, we conclude that the district court did not err by granting MCW's motion to dismiss pursuant to NRS 11.207(1), and we thus affirm the district court's judgment.[3]

_____, J.
Hardesty

We concur:

_____, C.J.
Pickering

_____, J.
Saitta

---

[3]On appeal, appellants also argue that the district court abused its discretion by granting MCW's motion to dismiss based upon the doctrine of judicial estoppel. Appellants assert that MCW waived the argument of judicial estoppel below by raising it for the first time in its reply in support of its motion to dismiss. *See Francis v. Wynn Las Vegas, LLC*, 127 Nev. ___, ___ n.7, 262 P.3d 705, 715 n.7 (2011) ("[A]rguments raised for the first time in [a] reply brief need not be considered."). However, we determine that MCW did not waive the argument of judicial estoppel. Based on the record, MCW's judicial estoppel argument was made in response to an argument made by appellants in their opposition to MCW's motion to dismiss.

Regardless, we conclude that the doctrine of judicial estoppel is inapplicable to this matter because the record indicates that the district court dismissed appellants' first complaint on procedural grounds, and, therefore, appellants never successfully asserted their first position. *See S. Cal. Edison v. First Judicial Dist. Court*, 127 Nev. ___, ___, 255 P.3d 231, 237 (2011) (holding that judicial estoppel may apply only if a party was successful in asserting its first position). Thus, we determine that the district court abused its discretion by granting MCW's motion to dismiss based upon the doctrine of judicial estoppel. Nevertheless, because the district court properly granted MCW's motion to dismiss based on NRS 11.207(1), such abuse was harmless error. *See Wyeth v. Rowatt*, 126 Nev. ___, ___, 244 P.3d 765, 769 (2010) (an error is harmless if the party cannot "demonstrate that their substantial rights were affected so that, but for the error, a different result may have been reached").