NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

NICOLE ANN DAVIS, *Appellant*.

No. 1 CA-CR 14-0780
FILED 10-6-2015

Appeal from the Superior Court in Maricopa County
No. CR 2013-448616-003
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Chris DeRose
*Counsel for Appellee*

Ballecer & Segal, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

**D O W N I E**, Judge:

**¶1**        Nicole Ann Davis appeals her conviction for child abuse. For the following reasons, we affirm.

## FACTS AND PRCEDURAL HISTORY

**¶2**        Davis, her husband, mother-in-law, and seven-year-old daughter, S.P., were sitting in a Jehovah's Witness Kingdom Hall courtyard. Hall elders began receiving complaints that Davis' husband was causing a disturbance. The elders contacted Scottsdale Police and requested assistance. Officers arrived and asked the family to leave the property several times, but they refused. Davis' husband stated only "Jehovah" could make them leave and "it would be war" if the officers tried to make them leave. The officers again warned the family they were trespassing and asked them to leave; they again refused. A Hall elder also told the family they were trespassing and asked them to leave.

**¶3**        Officers decided to take Davis' husband into custody and attempted to separate him from the rest of the family. Lieutenant Rasmussen placed himself between the husband and other family members. Davis then punched Lieutenant Rasmussen in his neck. Lieutenant Rasmussen grabbed Davis by the arm, attempted to take her to the ground, and both of them fell to the ground. Davis continued to fight, punching and kicking Lieutenant Rasmussen as he tried to gain control of her arms. Lieutenant Rasmussen told Davis to stop resisting, but she did not comply and was "screaming at the top of her lungs." Lieutenant Rasmussen eventually pinned Davis, holding her down until another officer could assist with handcuffing her. Davis continued resisting and trying to kick the officers.

**¶4**        S.P. appeared "extremely upset" during the incident, and Davis yelled "[l]ots of times" for the child to hit Lieutenant Rasmussen. S.P. was screaming "not to hurt her mommy." Davis continued yelling at S.P. to hit Lieutenant Rasmussen, whereupon S.P. began hitting him in the

face, head, and shoulders.  Lieutenant Rasmussen asked S.P., "[w]ould you please stop hitting me[?]" and S.P. complied.  The officers gained control of the situation and placed the three adults in handcuffs.  When officers attempted to put S.P. in a patrol car, Davis and her husband again yelled at the child several times to "fight" the officers.  S.P. did not comply this time and got into the patrol car.

¶5        Davis was charged with one count of aggravated assault, a class five felony in violation of Arizona Revised Statutes ("A.R.S.") sections 13-1203(A)(3), -1204(A)(8)(a); one count of resisting arrest, a class six felony, in violation of A.R.S. § 13-2508(A)(1); and child abuse, a class four felony, in violation of A.R.S. § 13-3623(B)(1).[1]  A four-day jury trial ensued.  At the close of the State's case-in-chief, Davis moved for a judgment of acquittal on the child abuse count, which the court denied.  The jury found Davis guilty of resisting arrest and child abuse but not guilty of aggravated assault.  The court sentenced her to two years' probation for each count, to run concurrently.

¶6        Davis timely appealed.  We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

¶7        Davis argues the court should have granted her motion for judgment of acquittal on the child abuse count.  We review *de novo* the sufficiency of evidence, viewing it in the light most favorable to sustaining the verdict.  *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011).  The trial court may enter a judgment of acquittal only if "no substantial evidence supports the conviction."  *State v. Davolt*, 207 Ariz. 191, 212, ¶ 87, 84 P.3d 456, 477 (2004).

¶8        The record includes substantial evidence of guilt as to the child abuse charge.  *See State v. Tison*, 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981) (In reviewing for sufficiency of evidence, "[t]he test to be applied is whether there is substantial evidence to support a guilty verdict.").  "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a

---

[1]       The indictment alleges child abuse in violation of A.R.S. § 13-3623(F)(B)(C) — a subsection that does not exist.  The jury was instructed under § 13-3623(B)(1), and Davis has not asserted any error associated with this issue.

reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). Substantial evidence "may be either circumstantial or direct." *State v. Henry*, 205 Ariz. 229, 232, ¶ 11, 68 P.3d 455, 458 (App. 2003).

**¶9** As charged, the offense of child abuse required proof that: (1) under circumstances other than those likely to produce death or serious injury, (2) Davis intentionally or knowingly, (3) caused or permitted a child to be placed in a situation where the person or health of the child was endangered, while having the care or custody of the child. *See* A.R.S. § 13-3623(B)(1). Endanger means "to expose to potential harm" that is more than the ordinary danger to which children are exposed on a daily basis. *State v. Mahaney*, 193 Ariz. 566, 569, ¶ 15, 975 P.2d 156, 159 (App. 1999).

**¶10** By refusing to leave the church property, Davis escalated a situation that necessitated police intervention, all while her seven-year-old daughter was present. Davis repeatedly refused to comply with officers' commands and was physically aggressive. In the midst of this chaotic and violent scene, which included use of a Taser on Davis' husband, Davis ordered her young daughter to join in the fracas by assaulting officers. S.P. complied with her mother's directives and began hitting the armed officer.

**¶11** Although Lieutenant Rasmussen exhibited restraint as to the child, who was uninjured, endangerment includes situations that subject a child to potential harm. *Id.* Substantial evidence exists from which reasonable jurors could find that S.P. was subjected to potential harm beyond an ordinary danger of everyday life. Her involvement in a chaotic melee between six uniformed and armed officers and three adults in a small courtyard could easily have resulted in harm to her. In addition to the obvious risks of injury, the jury heard testimony about dangers inherent in approaching an officer who is engaged with another individual and how standard police equipment such as a gun, Taser, and pepper spray, can come loose during a ground fight.

## CONCLUSION

**¶12** For the reasons stated, we affirm Davis' convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama